UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

RENA GHELICHKHANI a/k/a RANA
GHELICHKHANI,

           Plaintiff,

v.

NEW YORK COLLEGE OF TRADITIONAL
CHINESE MEDICINE, YEMENG CHEN,
SUNNY SHEN, SUSAN SU, MEGAN HAUNGS,
MONA LEE-YUAN, and KAT ZHAO,

           Defendant.

———————————————————————X

Civil Action No. 23-8629

**COMPLAINT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff RENA GHELICHKHANI a/k/a RANA GHELICHKHANI, by and through his and her attorneys the Law Offices of Victor M. Feraru, as and for her Complaint against Defendants, upon information and belief alleges:

### PRELIMINARY STATEMENT

1. This is a discrimination case, brought pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981"). Plaintiff seeks monetary damages as a result of Defendants egregious acts against her, as further alleged in this instant complaint.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S. Code § 1331. Federal question the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

3. Venue is properly set in this District under 28 U.S.C. §1391(b) since Defendants transact business within this judicial district. Likewise, a substantial part of the acts and omissions causing this action occurred in the Eastern District of New York. 28 U.S.C. § 1391(b).

4. Consistent with the Due Process Clause of the Fifth and Fourteenth Amendments, the Court has personal jurisdiction over Defendants, because Defendants are present in the Eastern District of New York, so requiring an appearance does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Further, All of Plaintiff's claims arise from conduct and agreements that the Defendant's engaged in in the Eastern District of New York.

5. This court also has personal jurisdiction over Defendants under and consistent with the Constitutional requirements of Due Process in that Defendants, acting through their agents or apparent agents, committed one or more of the following:

   a. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

   b. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or

   c. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if it

   d. regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

   e. expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

   f. owns, uses or possesses any real property situated within the state.

*See* N.Y. C.P.L.R. 302 (McKinney).

## JURY DEMAND

6. The Plaintiff demands a jury trial in this action.

## PARTIES

7. The Plaintiff is an individual who lives in Nassau County, New York.

8. Upon information and belief, Defendant NYCTCM is a traditional Chinese medicine school formed under the laws of the State of New York with a principal place of business located at 200 Old Country Rd., #500, Mineola, NY 11501.

9. Upon information and belief, Defendant NYCTCM's major business involves recruiting and accepting students for its traditional Chinese medicine and acupuncture educational programs and providing education for its students.

10. Upon information and belief, Defendant NYCTCM is an academic institution registered to do business in the State of New York. Its executive offices and main headquarters are located in Mineola, New York. It has conducted a substantial amount of business and generated a substantial amount of revenues in the State of New York.

11. Upon information and belief, the Individual Defendant are officers, directors, managers, and/or majority shareholders or owners of the Corporate Defendant.

12. Upon information and belief, Defendant Chen is the President of Defendant NYCTCM, and is located in Nassau County, New York.

13. Upon information and belief, Defendant Chen oversaw the organizational operations of Defendant NYCTCM, and is located in Nassau County, New York.

14. Upon information and belief, Defendant Shen is the Academic Dean of Defendant NYCTCM, and is located in Nassau County, New York.

15. Upon information and belief, Defendant Shen was, and still is, responsible for establishing academic policies and curriculums of the Corporate Defendant, and is located in Nassau County, New York.

16. Upon information and belief, Defendant Shen served as an academic advisor for enrolled students at Defendant NYCTCM, and is located in Nassau County, New York.

17. Upon information and belief, Defendant Su is the Records Manager of Defendant NYCTCM, and is located in Nassau County, New York.

18. Upon information and belief, Defendant Su maintained and reviewed, and still maintains and reviews, the academic records of students, and is located in Nassau County, New York.

19. Upon information and belief, Defendant Su generated, and still generates, students' grade reports upon request, and is located in Nassau County, New York.

20. Upon information and belief, Defendant Haungs is the Administrative Dean of Defendant NYCTCM, and is located in Nassau County, New York.

21. Upon information and belief, Defendant Haungs developed and implemented, and still develops and implements, Defendant NYCTCM's administrative policies, and is located in Nassau County, New York.

22. Upon information and belief, Defendant Haungs ensured, and still ensures, that Defendant NYCTCM's academic and administrative policies comply with applicable laws and regulations, and is located in Nassau County, New York.

23. Upon information and belief, Defendant Haungs oversaw, and still oversees, Defendant NYCTCM's admission policies, student records, finance, financial aid, and human resources, and is located in Nassau County, New York.

24. Upon information and belief, Defendant Lee-Yuan is the Clinic Director of Defendant NYCTCM, and is located in Nassau County, New York.

25. Upon information and belief, Defendant Lee-Yuan was, and still is, responsible for the implementation of policies and procedures in Defendant NYCTCM's student clinics, and is located in Nassau County, New York.

26. Upon information and belief, Defendant Lee-Yuan monitored and evaluated, and still monitors and evaluates, students' clinical progresses, and is located in Nassau County, New York.

27. Upon information and belief, Defendant Lee-Yuan addressed, and still addresses, concerns relating to students' clinical experience, and is located in Nassau County, New York.

28. Upon information and belief, Defendant Zhao is the Clinic Manager of Defendant NYCTCM, and is located in Nassau County, New York.

29. Upon information and belief, Defendant Zhao was, and still is, responsible for the administrative work of Defendant NYCTCM's student clinics, and is located in Nassau County, New York.

## FACTS

*Plaintiff Was Subject to a School Wide, Systemic, Bias Based Upon Her Race*

30. This is a discrimination case, brought pursuant to the provisions of the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991 ("Section 1981").

31. Plaintiff alleges that the Defendants have engaged in, and continue to engage in, a school-wide pattern and practice of discrimination, both intentional and systematic, on the basis of race and national origin, against herself and students who do not speak Chinese, as alleged in this Complaint.

32. Plaintiff seeks declaratory, injunctive, and equitable monetary relief from these practices; compensatory and punitive damages; equitable remedies of accounting, restitution and disgorgement; and an award of costs, expenses, disbursements, and attorneys' fees.

33. Plaintiff is a Persian-American residing in Nassau County, New York.

34. Plaintiff is a former student of Defendant NYCTCM, and from in or around the fall of 2016 to the spring of 2020, Plaintiff was a student at Defendant NYCTCM.

35. Defendant NYCTCM's business practices and systems discriminate against Persian-American and non-Chinese students because of their race and national origin in its academic institution.

36. The discriminatory practices engaged in by the Defendants are intentional and systematic in nature, and adversely affected, and affect, Plaintiff and non-Chinese students with respect to their opportunities to receive the education to which they were promised and for their professional development.

### *Plaintiff Received Desperate Treatment*

37. During the school years 2016 through 2020, intentional and systematic discrimination against non-Chinese students on the basis of their race and national original was wide-spread throughout the educational facilities of Defendant NYCTCM, which directly affected Defendant.

38. In or around November 2016, Defendant NYCTCM offered a freshman, Hongmin Jin ("Jin"), who is of Chinese-descent, an herbal dispensary technician job without requiring a completion of certain prerequisite courses although other non-Chinese students were not given the same opportunity.

39. To work as an herbal dispensary technician, students were required to complete all Individual Herbs courses.

40. Jin did not complete such prerequisite courses.

41. It was unusual for a freshman with no clinic experience to be given such an opportunity.

42. Jin is of Chinese-descent and spoke Chinese, and Defendant NYCTCM allowed Jin to have priority over other students who are not Chinese. Jin held the position for a long time and deprived other students of the opportunity to work as an herbal dispensary technician despite other non-Chinese students' qualifications.

### *Such Treatment Affected Outcomes for Plaintiff*

43. In or around the fall of 2017, Plaintiff was enrolled in Tui-Na class at the educational facilities of Defendant NYCTCM.

44. For Tui-Na class, Plaintiff took a practical test, which evaluated how students performed Tui-Na massage techniques.

45. During the practical test, professor He Le ("Le") randomly handed three pieces of small paper, each with a name of Tui-Na massage technique, to the students who then performed respective massage techniques.

46. The names of Tui-Na massage technique were handwritten by Le and written in *pinyin*, which is the Romanization of Chinese characters based on their pronunciation.

47. Plaintiff was not provided with English translations despite Complainant's repeated requests, and for that reason, Plaintiff could not understand or read the massage technique names.

48. Because Plaintiff was not provided with English translations, Plaintiff missed all three questions and received a grade of C for Tui-Na class.

49. Plaintiff complained of the lack of English translations during the practical Test.

50. Le dismissed the Complainant's complaint without any explanations.

51. When Plaintiff addressed this issue with Defendant Shen, who is the Academic Dean of Defendant NYCTCM, Defendant Shen was also dismissive of this complaint and stated that:

> [A]s long as the teacher provided both English and Chinese [n]ames in class, but made his expectation clear that students were expected to remember a few major Tui Na manipulation names in Chinese, and tested them accordingly in a practical exam, it's not the teacher's fault that you've lost points on those questions. In addition, all other students in your class have taken the same exam and have been graded by the same standards.

52. Despite Complainant's request, the Defendants failed to provide any official grievance procedures to address this issue.

53. During Complainant's junior and senior clinic shifts from in or around the fall of 2018 to the spring of 2020, Defendant NYCTCM's faculty members, clinic supervisors, and

Chinese students spoke in Chinese extensively for the duration of the clinic shifts while non-Chinese students, including Complainant, who did not speak or understand Chinese, were present.

54.     At one occasion, Plaintiff was in Yan Xue's ("Xue") clinic.

55.     Chinese speaking was pervasive in Xue's clinic.

56.     Plaintiff asked Xue a question about the difference in pulses between pregnant and non-pregnant women.

57.     Instead of providing guidance and/or explanations to Plaintiff directly, Xue explained the difference in Chinese to another student, who spoke Chinese, and asked that student to translate for her.

### *Defendants Blatantly Did Not Provide Accommodations to Plaintiff*

58.     Despite repeated requests made by Plaintiff and other non-Chinese students, clinic supervisors at Defendant NYCTCM refused to provide explanations, lectures, and guidance in English and continued to converse in Chinese with Chinese-speaking students only.

59.     Because of such intentional and systematic discriminatory behaviors of the Defendants, Plaintiff and non-Chinese students' clinical experience was severely limited and they could not fully participate in the clinics.

### *Defendants Were Given Multiple Notices of its Racial Biases*

60.     Multiple complaints about Chinese speaking in clinics were reported to the Defendants.

61.     Despite that, the Defendants refused and failed to address said issue and non-Chinese students' concerns.

62. Defendants failed to take necessary measures to prevent Defendant NYCTCM's faculty members, clinic supervisors, and Chinese students from speaking in Chinese during clinic shifts.

63. On multiple occasions throughout school years from 2016 to 2020, a number of lecturers at the educational facilities of Defendant NYCTCM taught their classes in Chinese on campus while non-Chinese students, including Complainant, were present.

64. Plaintiff and the non-Chinese students could not fully understand the lectures.

65. Plaintiff was present and personally witnessed that a lecturer used the entire breaktime to speak in Chinese explaining class contents for Chinese students and Chinese- speaking students only.

66. On multiple occasions throughout the school years 2016 through 2020, Chinese students at the educational facilities of Defendant NYCTCM formed study groups that excluded non-Chinese students.

67. Defendants were fully aware of this situation but failed to address the issue.

68. Defendants failed to take necessary measures to prevent exclusion of non-Chinese students.

69. This situation left Plaintiff and other non-Chinese students emotionally distressed and angry, looking for answers and accountability.

70. Plaintiff and other non-Chinese students have wasted valuable time and money in pursuit of an education and employment from a school that did not provide the education it promised to provide to its students.

71. Plaintiff and other non-Chinese students spent countless hours, days, weeks, months, and years undertaking intensive studies in the classroom as well as in the acupuncture

clinics. In doing so, they not only spent time, but also had to expend additional money to essentially re-take many of the classes and clinic shifts they had already taken.

72. As a result of the Defendants' intentional and systematic discriminatory practices, Plaintiff and other non-Chinese students have suffered, and continue to suffer, severe emotional distress, as the Defendants interrupted their lives, stalled their professional development, and abused the trust of these individuals seeking to launch their careers.

73. Defendants knew of the issue pertaining to pervasive Chinese speaking in their classrooms, clinics, and lectures but intentionally disregarded it.

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. §**
**1981**
**(Against All Defendants)**

74. Plaintiff repeats, reiterates, realleges, and incorporates by reference the allegations contained in all preceding paragraphs.

75. Defendants' discrimination against Plaintiff is in violation of the rights of Plaintiff afforded her by the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991.

76. By the conduct described above, the Defendants intentionally deprived Plaintiff of the same rights as are enjoyed by Chinese students to the creation, performance,

enjoyment, professional development, educational learning and development, and all benefits and privileges, of their contractual and educational relationships with the Defendants in violation of 42 U.S.C. § 1981.

77. Plaintiff was in contractual relationship with Defendant NYCTCM for educational services.

78. Plaintiff was obligated to pay tuition, registration fees, and other required fees and expenses to Defendant NYCTCM, and in return, the Defendants were obligated to render educational services and provide training opportunities that they promised for Complainant.

79. Plaintiff's right to make and enforce contracts has been violated when the Defendants refused to extend to Plaintiff the learning opportunity that was given to other Chinese students.

80. As a result of the Defendants' discrimination in violation of Section 1981, Plaintiff has been denied the opportunities for education and professional developments, thereby entitling her to injunctive and equitable monetary relief; and has suffered anguish, humiliation, distress, inconvenience and loss of enjoyment of life because of the Defendants' actions, thereby entitling her to compensatory damages.

81. In their discriminatory actions as alleged above, the Defendants have acted with malice or reckless indifference to the rights of Plaintiff, thereby entitling her to an award of punitive damages.

[SPACE INTENTIONALLY LEFT BLANK]

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a) Awarding compensatory damages to Plaintiff

b) Awarding Plaintiff reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action; and

c) Granting Plaintiff all such other relief as may be just and proper.


Dated: Nov. 20, 2023
Brooklyn, New York

Respectfully submitted,

LAW OFFICE OF VICTOR M. FERARU

By: _____
Victor M. Feraru, Esq.
1225 Franklin Avenue,
Suite 325
Garden City, New York 11530
Tel: 516-699-2285

*Attorney for Plaintiff
Rena Ghelichkhani
A/K/A Rana Ghelichkhani*