UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

───────────────────

№ 23-CV-8629 (RER) (AYS)

───────────────────

RENA GHELICHKHANI

VERSUS

NEW YORK COLLEGE OF TRADITIONAL CHINESE MEDICINE, YEMENG CHEN, SUNNY SHEN, SUSAN SU, MEGAN HAUNGS, MONA LEE-YUAN, AND KAT ZHAO

───────────────────

**MEMORANDUM & ORDER**

───────────────────

**RAMÓN E. REYES, JR., District Judge:**

Plaintiff Rena Ghelichkhani commenced this action pursuant to 42 U.S.C. § 1981, alleging the school where she was enrolled, New York College of Traditional Chinese Medicine, and its administrators, discriminated against her because she is Persian-American, non-Chinese, and does not speak Chinese. She alleges this discrimination manifested in the school's student hiring decision, in her courses, clinics, and student study groups, and through administrators' ignoring her grievances. Before the Court is defendants' motion to dismiss plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6). For the reasons which follow, defendants' motion to dismiss is GRANTED.

## BACKGROUND[1]

Plaintiff Rena Ghelichkhani ("Plaintiff"), now proceeding *pro se*, commenced this action through counsel under 42 U.S.C. § 1981. (ECF No. 1 ("Compl.") ¶ 1). Plaintiff is Persian-American and resides in Nassau County, New York. (Compl. ¶ 33). From the fall of 2016 to the spring of 2020, Plaintiff studied at the New York College of Traditional Chinese Medicine ("NYCTCM"). (Compl. ¶ 34). During this period, Plaintiff alleges that NYCTCM, along with its administrators Yemeng Chen, Sunny Shen, Susan Su, Megan Haungs, Mona Lee-Yuan, and Kat Zhao (collectively "Defendants"), discriminated against her and other students who are either not Chinese or do not speak Chinese. (Compl. ¶¶ 30, 35). She also alleges they discriminated against her because she is Persian American. (*Id.* ¶ 35).

Plaintiff points to four incidents to support her claim. First, she alleges that in November 2016, NYCTCM hired Hongmin Jin, a freshman of Chinese descent who spoke Chinese, for a job as an herbal dispensary technician without requiring certain prerequisite courses, and without offering this opportunity to non-Chinese students. (Compl. ¶¶ 38–42). Plaintiff does not allege that she or other students took those prerequisite courses or applied for this position. Second, she claims in fall 2017, during the practical exam for a massage techniques class, her instructor, Professor Le, tested three techniques by only providing them in their pinyin form (Chinese transliteration into Latin alphabet). (Comp. ¶¶ 43–46). Despite Plaintiff's requests for a direct English translation, Le did not provide one, and Plaintiff answered these questions incorrectly. (Comp. ¶¶ 47–48). She received a

---

[1] The Court acknowledges and offers its deep gratitude to Defne Akyildiz, a judicial intern and second-year law student at Columbia Law School, for her contributions to the research and drafting of this memorandum and order.

grade of C in the course. (Compl. ¶ 48). Plaintiff complained about the exam method to Defendant Shen, the Academic Dean, who explained that the professor had provided clear expectations for the course and all students were given the same exam. (Compl. ¶ 51). Plaintiff does not allege facts regarding any adverse impact beyond her lower passing grade. Third, Plaintiff contends that from fall 2018 to fall 2020, faculty members, clinic supervisors, and Chinese speaking students, often spoke exclusively in Chinese during clinic shifts. (Compl. ¶ 53). On one occasion, Plaintiff asked a clarifying question, and the instructor, Professor Xue, provided an answer in Chinese to a Chinese speaking student who then translated it to Plaintiff. (Compl. ¶ 57). On other occasions in her four years as a student, several lecturers delivered their classes in Chinese. (Compl. ¶ 63). Plaintiff does not specify dates for these events but contends that a lack of English translation in both formal and informal clinic, course, and study group activity generally limited her participation. (Compl. ¶¶ 57– 58, 64).

Lastly, she complains that Chinese students formed study groups that excluded non-Chinese students. (Compl. ¶ 66). Plaintiff does not specify whether these groups were conducted in Chinese or not, but the situation left her and other non-Chinese students distressed and angry. (Compl. ¶ 69). She and other non-Chinese students complained to administrators about all these situations to no avail (Compl. ¶¶ 60–62, 67–68), and some students paid to re-take classes and clinics. (Compl. ¶ 71). Plaintiff generally alleges Defendants' actions caused her anguish, humiliation, distress, inconvenience, and loss of enjoyment of life, and adversely impacted her opportunity to receive the education and professional development the school promised. (Compl. ¶¶ 70, 72, 77–80). Defendants

assert Plaintiff graduated in 2020 "as an 'A' student with a 3.61 GPA," obtained acupuncture certification, and opened her own practice. (ECF No. 23-1 ("Mem.") at 9).

While Plaintiff was represented by counsel when she filed her complaint on November 20, 2023 (Compl. at 1, 13), her attorney withdrew on March 18, 2024. (Order dated 3/18/2024). Plaintiff notified the Court on July 1, 2024, that she had filed a grievance against her former attorney and planned to proceed *pro se*. (ECF No. 18). Defendants filed their initial motion to dismiss for failure to state a claim on September 11, 2024 (ECF No. 20), which they refiled on October 18, 2024, after confirmation of Plaintiff's *pro se* status. (ECF No. 23; Orders dated 10/1/2024 and 10/18/2024). Plaintiff failed to respond to Defendants' motion by the initial deadline of November 19, 2024, as well as the Court's extension until December 23, 2024. (Order dated 12/10/2024). With the lapse of each deadline, Defendants requested the Court deem their motion unopposed and render a decision based on the existing record. (ECF Nos. 24, 25). All motion papers and court orders were mailed to Plaintiff at the address provided in her July 1, 2024, letter. (*Id.*; Order dated 12/10/2024).

## LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged*." Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Although factual allegations in a

complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Nevertheless, all reasonable inferences are drawn in plaintiff's favor. *Vaughn v. Phoenix House N.Y., Inc.,* 957 F.3d 141, 145 (2d Cir. 2020).

## **DISCUSSION**

Section 1981 prohibits discrimination in public or private non-governmental settings. 42 U.S.C. § 1981; *Minto v. Molloy Coll. ("Minto I")*, No. 16-cv-276 (KAM) (AYS), No. 16-cv-278 (KAM) (SIL), No. 16-cv-279 (KAM) (LGD), 2019 WL 4696287, at *7 (E.D.N.Y. Sept. 26, 2019) (citing *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001)). To state a claim under section 1981, a plaintiff must allege facts showing: (1) plaintiff is a member of a racial minority; (2) defendants intended to discriminate on the basis of race; and (3) the discrimination concerns one of the statute's enumerated activities. *Brown v. City of Oneonta*, 221 F.3d 329, 339 (2d Cir. 2000). These activities include the right to make and enforce contracts. 42 U.S.C. § 1981(a). A plaintiff must also establish a causal link that the alleged harm, or loss of a protected right, would not have occurred 'but for' plaintiff's race. *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020).

Race is the only protected class under section 1981. *Hooda v. Brookhaven Nat. Lab'y*, 659 F. Supp. 2d 382, 392 (E.D.N.Y. 2009) ("Section 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age") (citing *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir.1998)) (collecting cases). This broadly includes color, ancestry, and ethnicity, but not national origin. *Vill. of Freeport v. Barrella*, 814 F.3d 594, 604–05 (2d Cir. 2016) (citing *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604 (1987)). The statute's requirement to plead racial minority status does not restrict who can allege a violation: someone of any race can bring a claim, so long as the discrimination is based on

race. *Id.*; *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 295 (1976) ("[T]he Act . . . proscribe[s] discrimination in the making or enforcement of contracts against, or in favor of, any race."). A common language, on its own, does not constitute a racial group, *Soberal-Perez v. Heckler*, 717 F.2d 36, 41 (2d Cir.1983) (clarifying such categorization under similar civil rights statutes), and a defendant speaking one language over another does not typically constitute discrimination on the basis of race. *Lopez v. Bay Shore Union Free Sch. Dist.*, 668 F. Supp. 2d 406, 414 (E.D.N.Y. 2009).

The statute of limitations for section 1981 claims is four years. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 260 (2d Cir. 2023) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004)). When a plaintiff alleges various discriminatory acts over a length of time, the "proper focus" to determine whether they are time-barred is the date of each discriminatory act. *Ikedilo v. Statter*, No. 23-7947, 2025 WL 1011346, at *2 (2d Cir. Apr. 2, 2025) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980)). In some circumstances, a plaintiff may be able to start the clock at the most recent instance of discrimination and include otherwise time-barred incidents as part of an ongoing discriminatory practice or policy. *Corrado v. N.Y. Unified Ct. Sys.*, 163 F. Supp. 3d 1, 20 (E.D.N.Y. 2016) (explaining the "continuing violations" doctrine), *aff'd*, 698 F. App'x 36 (2d Cir. 2017). This is typically applied in hostile work environment or retaliation claims, and the Second Circuit heavily disfavors its application "absent a showing of compelling circumstances." *Id.* (citing *Bright v. Coca Cola Refreshements* [sic] *USA, Inc.*, No. 12-CV-234 (BMC), 2014 WL 5587349, at *4 (E.D.N.Y. Nov. 3, 2014), *aff'd*, 639 F. App'x 6 (2d Cir. 2015)); *see also Minto v. Molloy Coll. ("Minto III")*, No. 16-cv-276 (KAM) (AYS), No. 16-cv-278 (KAM) (SIL), No. 16-cv-279 (KAM) (LGD), 2021 WL 804386, at *2 (E.D.N.Y. Mar. 3, 2021) (characterizing such

6

circumstances as those where: a discrete event is hard to identify; there is an expressly discriminatory policy; or defendant's pattern of conduct was covert and only discovered later) (citations omitted).

Here, Plaintiff does not explicitly allege a continuing violation but does claim Defendants engaged in a "pattern and practice of discrimination." (Compl. ¶ 31). Defendants argue the different allegations are not connected and most of the time Plaintiff was enrolled at NYCTCM is beyond the statutes of limitations (Mem. at 11). They are correct. Even liberally construing Plaintiff's timeline, allegations about discrete conduct of different defendants at different times only linked by her otherwise conclusory discrimination claim do not present any "compelling circumstances" to unconventionally apply this doctrine. *See Bright*, 2014 WL 5587349, at *4 ("Incidents that involve different perpetrators, actions, or targets, or are temporally distant from one another, may be insufficiently related.") (citing *McGullam v. Cedar Graphics*, 609 F.3d 70, 78 (2d Cir.2010)).

Taken individually, then, all but a portion of one incident are time-barred. The first—NYCTCM hiring Jin to an herbal dispensary technician job—was in November 2016, seven years before Plaintiff filed her complaint. (Compl. ¶ 38). The second—Professor Le's practical massage techniques exam—was in fall 2017, six years before Plaintiff filed her complaint. (Comp. ¶¶ 43–47). The third—Professor Xue and others often speaking exclusively in Chinese during clinic shifts—took place between fall 2018 to fall 2020. (Compl. ¶ 53). Putting aside the paucity of facts about timing or frequency, any incidents before fall 2019 were more than four years before plaintiff filed her complaint. The fourth—Chinese students forming exclusive study groups, and administrators ignoring her complaints about it—lacks any dates whatsoever. (Compl. ¶¶ 66, 69). As Defendants

7

correctly argue, the only portion of these events that could potentially fall within the statute of limitations would be clinic shifts or study groups sometime between late November 2019 to spring 2020. (Mem. at 11). But Plaintiff declines to be specific, leaving no discrete incidents for the Court to analyze. Nevertheless, as the statute of limitations is the last and least of Defendant's' arguments, the Court still turns to whether these acts (either in full or in part) are sufficient to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Section 1981's right to "make and enforce contracts" free of discrimination includes the implied contracts between enrolled students and their universities. *Minto v. Molloy Univ. ("Minto IV")*, 715 F. Supp. 3d 422, 431 (E.D.N.Y. 2024). There is no dispute that Plaintiff was enrolled at NYCTCM from 2016 to 2020, so Defendants' contention that she does not properly allege an express or implied contract (Mem. at 8–9), is incorrect. Defendants may be correct that they did not breach said contract (*Id.*), but Plaintiff does not allege breach of contract claims for the Court to assess. Where Defendants do prevail is in their arguments on the remaining elements of a section 1981 claim. Reading Plaintiff's complaint liberally, even though it was crafted by counsel, the Court agrees that she does not allege sufficient facts to demonstrate that Defendants intentionally deprived her of the same rights enjoyed by students of a different race in the context of her implied contract as an enrolled student at NYCTCM.

Plaintiff contends Defendants discriminated against her because she is Persian-American, and against her and other students because they either "do not speak Chinese" or are "non-Chinese." (Compl. ¶¶ 30, 35). She does not clarify whether "Persian-American" is a designation of ethnicity or national origin/citizenship, but none of her four allegations specify any facts regarding this classification. Any allegations of discrimination on this basis

8

are not only insufficiently pleaded but hardly pleaded at all. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 398 (2d Cir. 2006) ("Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss.") (quotation marks, alterations, and citation omitted). Her use of "non-Chinese" students seems to primarily designate those who do not speak the Chinese language, as most of the allegations concern settings where instructors and students spoke in Chinese. (Compl. ¶¶ 38, 42–47, 53, 66, 69). Even when speculating about NYCTCM's reasons for hiring Jin, "who is of Chinese-descent and spoke Chinese" (Compl. ¶ 42), Plaintiff provides nothing to determine what if any preference Jin was afforded based on ethnicity, as opposed to language skills. Her claim that "Chinese students . . . formed study groups that excluded non-Chinese students" (Compl. ¶ 66), is similarly devoid of details on the criteria for inclusion or exclusion from these groups. Even disregarding that her complaint was drafted with an attorney, it is difficult to make any inference that her examples turning on language skills intend to designate race or ethnicity within the meaning of section 1981. *See Lopez*, 668 F. Supp. 2d at 414; *cf. Barrella*, 814 F.3d at 600–06 (2d Cir. 2016) (providing extensive overview of a when common language could be one of several factors in designating a racial or ethnic category in the context of Hispanic/Latino).

      Plaintiff similarly fails to sufficiently allege Defendants intentionally discriminated against her based on any grounds, let alone race. Intentional discrimination may be direct, such as race-based disparaging remarks or written policies, or indirect, such as treating a plaintiff differently than similarly situated individuals of another race. *Minto IV*, 715 F. Supp. 3d at 431; *see also Graham v. Long Island R.R.*, 230 F.3d 34, 39 (2d Cir. 2000). But a plaintiff must show that she was "similarly situated in all material respects to the

individuals with whom she seeks to compare herself," *Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003). The two need not be identical but require "a reasonably close resemblance of the facts and circumstances of the plaintiff's and comparator's cases." *Ikedilo*, 2025 WL 1011346, at *4 (citing *Graham,* 230 F.3d at 40) (alteration omitted). School staff's use of one language over another without additional facts to suggest intentional discrimination do not raise an inference of discriminatory intent. *Lopez*, 668 F. Supp. 2d at 414.

Plaintiff does not allege any direct discrimination. With respect to NYCTCM hiring Jin without completion of certain prerequisites, Plaintiff fails to allege any similarities in circumstance: she does not claim that she or others completed those prerequisites, applied for the position, or were rejected from it. Again, Plaintiff's complaint more readily suggests that NYCTCM hired Jin because of linguistic ability (Compl. ¶ 42), and Defendants contend Jin had qualifications Plaintiff did not (Mem. at 3, 7). Two of Plaintiff's other allegations—Professor Le's massage exam and Professor Xue's clinic—also appear to rest on language skills. Plaintiff's allegations about exclusive study groups or administrators ignoring her complaints provide no details about the basis for these actions and similarly cannot support any claim of intentional discrimination.

None of Plaintiff's incidents establish a cognizable harm either, let alone a causal link that such harm would not have occurred but for her race. The alleged harm in NYCTCM's student hiring decision is merely that "other non-Chinese students were not given the same opportunity." (Compl. ¶ 38). But Plaintiff cannot allege harm from a position she did not apply to, even if NYCTCM *did* hire the other student based on that student's race (an interpretation altogether too liberal). It is also difficult to discern harm in missing

three exam questions where the course expectations were likely clear (Compl. ¶ 51; Mem at 8), Plaintiff passed the course (Compl. ¶ 48), and there are no allegations that Professor Le's decisions about the form of the exam were based on race. Any adverse outcome again appears to turn on Plaintiff's lack of Chinese-speaking ability rather than race. Her claims of distress in relation to study groups or administrators' lack of intervention are also not enough. (Compl. ¶¶ 69–70, 72, 77-80); *Iqbal*, 556 U.S. at 678 ("labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (quoting *Twombly*, 550 U.S. at 555) (quotation marks omitted). The undated allegation that students had to pay to retake courses or clinics where instructors often spoke in Chinese (Comp. ¶ 71), *is* cognizable. But the only reasons Plaintiff herself offers are repeatedly rooted in her inability to speak Chinese. (Compl. ¶¶ 46-49, 53-58, 63-64). And, while the Court lacks the benefit of counterarguments Plaintiff may have provided in response to this motion, Defendants evince that she successfully graduated from her program, obtained acupuncture certification, and operates her own practice. (Mem. at 9).

Plaintiff clearly did not approve of some of Defendants' teaching techniques, but pedagogical disappointments paired with inability to speak a particular language do not make a discrimination claim. Even under the most liberal review, she fails to state a claim under section 1981.

## **CONCLUSION**

For the reasons set forth above, Plaintiff's complaint is dismissed without prejudice. The Clerk of the Court is respectfully directed to close the case and mail a copy of this order to Plaintiff.

SO ORDERED.

/s/ Ramón E. Reyes, Jr.
_____

RAMÓN E. REYES, JR.
United States District Judge

Dated: August 29, 2025
    Brooklyn, NY